```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ x
EDDIE TARAFA, pro se,                                  :
                              Plaintiff,               :
             -against-                                 :
                                                       :    **MEMORANDUM & ORDER**
B.O.P. MDC BROOKLYN, et al.,                           :    07-CV-554 (DLI) (LB)
                              Defendants.              :
                                                       :
------------------------------------------------------ X
```
**DORA L. IRIZARRY, United States District Judge:**

On December 18, 2008, defendants Paul M. Laird, David E. Ortiz, Raul Campos, Mahmoud Ittayem, Peter Goldstein, M.D., Michael Borecky, M.D., Robert Beaudoin, M.D., Troy Branswich, P.A, Asiamel Cruz and Jennifer Dannels moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure for dismissal of *pro se* plaintiff Eddie Tarafa's amended complaint. Plaintiff seeks $15,000,000 in damages against each individual defendant for deliberate indifference to his serious medical needs in violation of the Eighth Amendment, based on their alleged failure to provide him with proper medical treatment for hernias and related ailments. For the reasons set forth below, the motion for summary judgment is granted, and plaintiff's amended complaint is dismissed in its entirety.

**I.     Background**

Plaintiff, a state court prisoner, was sentenced in December 2004 in Bronx Supreme Court to life imprisonment for second degree murder, conspiracy, criminal possession of a weapon, and criminal solicitation. He was transferred to the federal Metropolitan Detention Center in Brooklyn, New York ("MDC") from September 2005 until January 2008 on a writ *ad testificatum*. The writ has since been satisfied, and plaintiff was transferred back to the New York State prison system on January 23, 2008.

Prior to his incarceration, in 2000, plaintiff sustained multiple gunshot wounds to his abdomen, hip, and left hand, resulting in multiple surgeries. Plaintiff developed a painful abdominal wall hernia as a result of his previous surgeries.

On January 31, 2007, plaintiff filed this action against the Bureau of Prisons ("BOP") and MDC prison and medical staff, seeking an order from this court requiring the defendants to provide hernia surgery and monetary damages for pain, suffering, and aggravation of the injury resulting from the delayed surgery. On June 15, 2007, defense counsel advised the court that the hernia surgery had been scheduled. On July 23, 2007, despite completion of the hernia surgery on June 26, 2007, the court allowed plaintiff to continue his action pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[1] However, the court dismissed plaintiff's claim under the Federal Tort Claims Act ("FTCA") as premature due to plaintiff's failure to first exhaust all administrative remedies. On January 15, 2008, plaintiff sought leave to amend his complaint, which request was granted on February 22, 2008. Defendants now move for summary judgment dismissing all the claims set forth in the amended complaint.

Plaintiff's amended complaint alleges that the medical services provided at the MDC are so deficient that they reflect a deliberate indifference to the serious medical needs of prisoners and, thereforem constitute a violation of the Eighth Amendment. Plaintiff claims that, since the time he was transferred from the New York State prison system to the MDC in September 2005, defendants continuously ignored his complaints of extreme pain arising from his hernias and related complications, and difficulties sleeping, eating, and defecating. He further alleges that defendants failed to promptly provide necessary medical treatment. Specifically, plaintiff claims

---

[1] Plaintiff brought his claim under 42 U.S.C. § 1983, but the court liberally construed it as a *Bivens* claim in deference to plaintiff's *pro se* status.

that he complained about his condition for nine months before being referred to an outside surgeon, and that that it took defendants eighteen months to comply with specific orders from a prison doctor, which were consistent with the outside surgeon's subsequent recommendation, that plaintiff's hernias be surgically treated. Finally, plaintiff complains that, after surgical repair was completed on June 26, 2007, he did not receive adequate post-surgical treatment or pain medication.

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," FED. R. CIV. P. 56(e).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988)).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)) (in a suit against prison medical officials for deliberate indifference to medical needs in violation of the Eighth Amendment, finding that *pro se* filings are "to be liberally construed"). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (citation omitted). Accordingly, the court will interpret plaintiff's supporting papers "to raise the strongest arguments that they suggest.'" *Forsyth v. Fed'n Employment and Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### III. Discussion

The Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003); *see Tindal v. Goord*, 340 F. App'x. 12, 13 (2d. Cir. 2009) (indicating that findings of negligence or malpractice are not relevant to a deliberate indifference claim). Accordingly, "not every lapse in prison medical care will rise to the level of a constitutional violation." *Id*. Plaintiff must show more than "negligence in diagnosing or treating a medical condition," because Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotation marks and citations omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. To be liable, "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

An official's "failure to alleviate a significant risk that [he] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment[.]" *Farmer*, 511 U.S. at 838. To substantiate a claim of deliberate indifference, plaintiff must establish two elements: "that [he] had a 'serious medical condition' and that it was met with 'deliberate indifference.'" *Mayo v. County of Albany*, No. 09-1745-cv, 2009 WL 4854022, at *1 (2d Cir. Dec. 17, 2009) (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)). This standard "requires a showing that defendants acted with 'a state of mind that is the equivalent of criminal recklessness.'" *Mayo*, 2009 WL 4854022 at *1 (quoting *Hernandez v. Keane*, 341 F.3d 137, 244 (2d Cir. 2003)); *see also Day v. Warren*, No. 08-3131-pr, 2010 WL 93150, at *1 (2d Cir. Jan. 12, 2010) (affirming district court's grant of summary judgment on an Eighth Amendment claim where plaintiff failed to show "that the Defendants knew of and disregarded an excessive risk to his health").

### A. Plaintiff Fails to Show He Suffered From a Serious Medical Condition

Plaintiff must first prove "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citations omitted). The undisputed affidavit of defendant's expert physician Dr. Anthony Milano indicates that plaintiff's hernia did not constitute such a condition of urgency. (*See* Decl. of Anthony Milano, M.D., in Supp. of Mot. for Summ. J., Docket # 111 ("Milano"), Ex. B.) Dr. Milano indicates that, on September 18, 2006, an examination by Dr. Harold Beaton at New York Downtown Hospital found that plaintiff suffered from "an easily reducible abdominal incisional hernia that was noted to be

increasing in size and without symptoms except with intermittent pain with hard bowel movement and coughing," as well as an umbilical hernia. (Milano Ex. B at 2; *see also* Milano Supplemental Decl., Docket #112 ("Milano Supp.") Ex. A at 2; Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Opp."), Ex. 6.)[2] Although Dr. Beaton opined on October 6, 2006 that plaintiff's condition required surgical treatment, "at no time was there any evidence of irreducibility, incarceration, strangulation or other morbid complications of this hernia." (Milano Ex. B at 2.) As Dr. Milano reports, prison doctors noted in April 2007 that plaintiff's incisional hernia had become more uncomfortable for him "but remained easily reducible, nontender, and without other complications." (*Id.*; *see also* Opp. Ex. 10, 24.) Dr. Milano concludes that plaintiff's condition "never constituted an emergency—surgical or otherwise—and that the operative repair of Mr. Tarafa's hernia constituted only truly elective surgery, and not emergency surgery." (Milano Supp. Ex. A at 2).

Dr. Milano's conclusion is well-supported by plaintiff's medical records. (*See, e.g.*, Opp. Ex. 4 (describing plaintiff's evaluation by medical care providers between December and May 2006, and noting that each time "the provider has found no signs of an un-reducible hernia"); Ex 10 (treating physician noting on April 2, 2006 that plaintiff's incisional hernia was "easily reducible"); Ex. 22 (treating physician noting on July 19, 2006 that plaintiff's incisional hernia was not incarcerated); Ex. 9 (treating physician indicating on February 9, 2007 that surgical repair of incisional hernia was "elective"); Ex. 25 (on May 21, 2007, treating physician characterizing plaintiff's surgery as "elective and not necessary now"); Ex. 13 (reflecting treating physician's understanding on June 1, 2007 that BOP would "provide the surgery even though it

---

[2] Plaintiffs Opposition to Defendant's Motion for Summary Judgment was filed on ECF as Docket #102, with corresponding Exhibits 1 to 48 filed as Docket #101. Plaintiff also filed a separate Opposition to the Dr. Milano's Expert Report, filed as Docket #100, which was carefully reviewed by the court but not specifically cited in this Order.

6

is an elective operation."). Indeed, Dr. Beaton performed the surgical repair of the incisional and umbilical hernias on June 26, 2007 without complication and attended with good healing. (Milano Ex. B at 2; Opp. Ex. 14A, 29-30.)

Plaintiff provides no evidence, except for his own conclusory allegations, to challenge Dr. Milano's opinion that plaintiff "received timely and appropriate medical specialty consultation and care." (Milano Ex. B at 2.) Thus, the court cannot find that the hernias were a sufficiently "serious" condition, the alleged mismanagement of which would rise to the level of an Eighth Amendment violation. *See Vasquez v. Runned*, 05-cv-6082 (RCC) (KNP), 2007 WL 891224, at *5 (S.D.N.Y. Mar. 22, 2007) (finding no Eighth Amendment violation arising out of "a temporary delay in the provision of otherwise medically adequate treatment" related to two ventrical hernias where "the delay in treatment does not worsen the prisoner's condition"); *Arroyo v. City of New York*, No. 99-cv-1458 (JSM), 2003 WL 22211500, at *2 (S.D.N.Y. Sept. 25, 2003) (finding that an alleged eight-month delay in surgical repair of an inmate's inguinal hernia was not serious enough to amount to an Eighth Amendment violation); *Gonzalez v. Greifinger*, No. 95-cv-7932 (RWS), 1997 WL 732446 (S.D.N.Y. Nov. 25, 1997) (holding that an umbilical hernia "did not constitute serious medical need"); *Davidson v. Scully,* 914 F. Supp. 1011, 1015-16 (S.D.N.Y. 1994) (holding that a hernia was not sufficiently serious for an Eighth Amendment medical claim).[3]

---

[3] *Cf. Scaccia v. County of Onondaga, New York*, 07-cv-207 (GTS) (GJD) 2009 WL 4985683, at *6 (N.D.N.Y. Dec. 15, 2009) (finding plaintiff alleged having a serious medical need where he experienced, *inter alia*, "excruciating" pain that led to a physical collapse, an incarcerated hernia, confinement to a hospital bed, physical immobility without the use of a wheelchair, and the inability to eat); *Day v. Lantz*, 487 F. Supp. 2d 30, 31 (D. Conn. 2007) (finding plaintiff alleged having a serious medical need where, *inter alia*, medical examiners found that hernia was at risk of becoming strangulated).

### B. Plaintiff Fails to Show Deliberate Indifference to His Medical Needs

Plaintiff must also prove, "[a]t the most basic level . . . that he was 'actually deprived of adequate medical care.'" *Davila v. UConn Med. Ctr.*, No. 08-5345-pr, 2009 WL 3765990, at *2 (2d Cir. Nov. 12, 2009) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). "Mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* (quoting *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998)); *accord Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("[T]he essential test is one of medical necessity and not one simply of desirability.").

Although plaintiff challenges the propriety of the diagnosis and treatment he received for his hernia, he does not establish that his complaints were met with deliberate indifference. In fact, plaintiff's amended complaint and opposition to the summary judgment motion indicate that he received a great deal of medical consultation, evaluation, and treatment. For instance, plaintiff concedes that he was seen by a prison doctor on December 22, 2005, shortly after his transfer to the MDC, and again on January 25 and March 21, 2006. (Am. Compl. at 2-3; Opp. at 3). Plaintiff also indicates that, between April and July 2006, he was evaluated by four different members of the prison medical staff, each of which prescribed a different type of pain medication to ameliorate plaintiff's discomfort. (Am. Compl. at 4-6; Opp. Ex. 10, 21-22.) Plaintiff's medical records show that, each time, the provider found no signs of an un-reducible hernia. (Opp. Ex. 4.)

Plaintiff claims that he did not receive medical attention while segregated in the Special Housing Unit ("SHU") for disciplinary reasons between late August and mid-October 2006. (Opp. at 17 & Ex. 16; *see also* Milano Ex. B at 2.) However, such claims are belied by allegations in the Amended Complaint and medical records showing that plaintiff had two

8

consultations on September 18 and October 5, 2006 with an outside surgeon at New York University's Medical Center, as well as a consultation on October 6, 2006 with the MDC's chief physician. (Am. Compl. at 7-9; Opp. at 4 & Ex. 6.) Contrary to plaintiff's allegations, prescribed medications for allergy, pain, and stool softening appeared to have been available to plaintiff even while confined in SHU. (Decl. of Peter Goldstein, M.D., in Supp. of Defs.' Mot. for Summ. J., Docket #113, at ¶ 1; Milano Ex. B at 2.)

Plaintiff reports having access to prison medical staff on January 4 and January 12, 2007 (Am. Compl. at 13-14.) He was also evaluated by prison doctors on February 5, February 9, February 12, April 2, May 7, and May 21, 2007. (Opp. at 5 & Ex. 9, 23, 25.) The uncontroverted record confirms that, during his incarceration at the MDC, plaintiff was treated with various pain medications such as Naproxen Sodium, Acetaminophen, Tylenol 3, and Motrin, as well as Docusate Sodium and Colace, which are stool softeners, to relieve pain from his hernia on defecation. (Milano Decl. Ex. B at 2; Opp. Ex. 15, 19.) His asthmatic coughing, which might have aggravated the hernia, was treated with Albuterol and Triamcinolon inhalers. (*Id.*) He also received an elastic band to reduce his hernia. (Milano Decl. Ex. B at 2; Opp. Ex. 9)

After plaintiff received surgery for his hernia in June 26, 2007, he had access to members of the prison medical staff on June 28, July 3, July 4, July 7, July 8, July 9, July 16, July 18, July 19, and July 23. (Am. Compl. at 22-29; Opp. Ex. 26-28, 38-39) Various staff members prescribed and administered different types of pain medication, changed the dressings on plaintiff's surgical wounds, removed the stitches and staples from the surgery, and gave plaintiff a two-piece clothing pass so as to avoid irritating the wounds with standard prison jumpsuit. (*Id.*; Opp. Ex. 19.) In sum, the record establishes that MDC's medical staff did not respond to plaintiff's medical needs with deliberate indifference.

9

Even if, as plaintiff alleges, the medications prescribed were insufficient to alleviate his pain and/or caused stomach inflammation and vomiting, and the hernia surgery was unduly delayed, his claim "is, at best, one for negligence or malpractice, which is insufficient to attach liability to any of the remaining defendants." *Partee v. Wright*, 335 F. App'x. 85, 86 (2d Cir. 2009); *see also Tindal*, 340 F. App'x. at 13 (affirming summary judgment for defendants where plaintiff's claim was "in the nature of medical malpractice, rather than deliberate indifference"). Because the record shows that plaintiff "received appropriate and reasonable care given his actual medical condition—and that he simply disagrees with that recommended care—his constitutional claim fail[s] as a matter of law." *See Davila*, 2009 WL 3765990 at *2.[4]

**C. FTCA Claim**

Under the FTCA, a claim against the United States for money damages cannot be instituted unless the claimant has first exhausted all administrative remedies. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 107 (1993). In its July 23, 2007 Order dismissing plaintiff's FTCA claim for failure to exhaust, the court granted plaintiff leave to refile his FTCA claim within thirty days. In a letter addressed to U.S. Magistrate Judge Lois Bloom dated September 25, 2007, plaintiff advised the court that he had refiled a timely FTCA claim. However, a review of plaintiff's submission reveals that, on July 29, 2007, he merely initiated new FTCA claims as opposed to amending his complaint in this action to include the ripe FTCA claim for court review. Plaintiff cannot salvage his untimely FTCA claim by raising it in his opposition to the instant motion for summary judgment. Accordingly, the court finds that plaintiff waived his FTCA claim, and dismisses any claims against the United States and its agencies, the BOP and its operating units at the MDC. *See McNeil,* 508 U.S. at 112-13.

---

[4] Since plaintiff fails to establish a claim under the Eighth Amendment for deliberate indifference, the court need not reach defendants' qualified immunity arguments.

**IV. Conclusion**

For the reasons set forth above, defendant's motion for summary judgment is granted, and plaintiff's claim is dismissed in its entirety. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
　　　　March 17, 2009

　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge